WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Grain Dealers Mutual Insurance Company, an Indiana company,<br><br>        Plaintiff,<br><br>v.<br><br>Donnetta S. Sharbono, surviving wife/on behalf of herself and the surviving children of deceased and as the surviving parent of Christopher B. Sharbono; et al.,<br><br>        Defendants. | No. CV-12-02607-PHX-GMS<br><br>**ORDER** |

Donnetta S. Sharbono, surviving wife/on behalf of herself and the surviving children of deceased and as the surviving parent of Christopher B. Sharbono,

        Counterclaimants,

v.

Grain Dealers Mutual insurance Company, an Indiana company,

        Counterdefendant.

Maria Kubal, et al.,

        Counterclaimants,

v.

Grain Dealers Mutual Insurance Company, an Indiana company,

        Counterdefendant.

Pending before the Court is Plaintiff's Motion for Summary Judgment in this declaratory judgment action. For the following reasons, Plaintiff's motion (Doc. 52) is granted.

## BACKGROUND

Plaintiff Grain Dealers Mutual Insurance Company ("Grain Dealers"), seeks a declaratory judgment limiting their liability on a commercial liability policy held by Defendant Hugo Flores (d/b/a Heber Tire & Oil Express, f/k/a the Heber Tire Shop) ("Flores"). (Doc. 52 at 2.) The liability arises from an auto accident that occurred on November 5, 2009. (Doc. 52 at 3.) On that day Gary Sharbono and Christopher Sharbono were driving westbound in a Ford pickup on Interstate 8 near Winterhaven, California, just west of Yuma, Arizona. (Doc. 1 ¶ 18.) At the same time, Andrew Kubal was driving a Volvo tractor trailer eastbound on Interstate 8. (*Id.*) A wrongful death lawsuit by the Kubal Defendants alleges that a Michelin tire on the front driver's side of the Ford pickup truck failed. (Doc. 61 at 5.) The tire was allegedly purchased from Flores' Heber Tire Shop. (*Id.*) The tire failure is alleged to have caused a loss of control of the pickup truck and a head-on collision between it and the on-coming Volvo tractor trailer. (*Id.*) No one survived the collision. (Doc. 53 ¶ 13.)

Defendant Flores, who allegedly sold the Michelin tire to the Sharbonos, was insured at all relevant times by a Grain Dealers commercial liability insurance policy. (Doc. 53 ¶ 1; Doc. 1-1.)[1] The policy limits were for $500,000 for "any one occurrence," subject to a $1,000,000 "Products-Completed Operations Aggregate Limit" and a

---

[1] The Kubal Defendants contest the authenticity of the Flores insurance policy produced by Grain Dealers at Doc. 1-1. However, the author of the policy, a Grain Dealers Commercial Lines Underwriter named Sarah Burch, swears that the Grain Dealers policy attached is "a true specimen of Policy CPP 524 983 as of November 5, 2009, issued to FLORES, HUGO, P.O. Box 733, Heber, Arizona 85828." She also attests that "attached photostatic copy of the Grain Dealers Mutual Insurance Company's Home Office Copy of CPP 524 983 issued to FLORES, HUGO and it is a true, accurate and complete copy of the Home Office record." The Kubal Defendants' attorney, John D. Rowell, has also have submitted standard insurance forms that he states in his experience are often offered. (Doc. 59 (Decl. of John. D. Rowell).) However, even if there was reason to doubt the authenticity of the Flores policy put forth by Grain Dealers, the Kubal Defendants and their attorney have not pointed to any relevant provision differences between the policy put forth by Grain Dealers and the standard form put forth by Mr. Rowell.

$1,000,000 "General Aggregate Limit." (Doc. 1-1 at 51, 62.) There is no dispute that the policy defined "occurrence" as "an accident," "including continuous or repeated exposure to substantially the same general harmful conditions." (Doc 1-1 at 66.) A dispute apparently arose during settlement discussions between Grain Dealers and Defendants as to the proceeds available from the Flores insurance policy. (Doc 59 at 2.) Grain Dealers claim that the policy limit is $500,000 because there was only one "occurrence" under the policy. (Doc. 1 at 6.) Kubal Defendants claim the term "occurrence" is ambiguous and therefore should be construed against the issuer, Grain Dealers, and also that there was more than one occurrence, due to multiple acts of negligence that led to the injury. (Doc. 61 at 10.) Both Grain Dealers and the Kubal Defendants move for declaratory judgment. (Doc. 52; Doc. 23 at 9.)

## DISCUSSION

### I. LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250).

No party contests that Arizona law applies to this case. Interpretation of an insurance policy is a question of law, and is often an appropriate issue for the Court to resolve on cross-motions for summary judgment. *See Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 46, 13 P.3d 785, 788 (Ct. App. 2000); *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998). Arizona law directs courts to construe

an insurance contract "according to [its] plain and ordinary meaning." *Keggi*, 199 Ariz. at 46, 13 P.3d 785; *see Aztar Corp. v. U.S. Fire Ins. Co.*, 223 Ariz. 463, 469, 224 P.3d 960, 966 (Ct. App. 2010). "If a clause may be susceptible to different constructions ... [the Court] will first attempt to discern the meaning of the clause by examining the purpose of the exclusion in question, the public policy considerations involved and the transaction as a whole." *Keggi*, 199 Ariz. at 46, 13 P.3d 785 (internal quotations omitted). "Generally, the insured bears the burden to establish coverage under an insuring clause, and the insurer bears the burden to establish the applicability of any exclusion." *Id.* Only when an insurance contract is actually ambiguous will a court employ other canons of construction, such as construing the ambiguity against the insurer, *see Thomas v. Liberty Mutual Insurance Co.,* 173 Ariz. 322, 325, 842 P.2d 1335, 1338 (Ct. App. 1992), or favoring the protection of the interests of injured victims, see *American Family Mutual Insurance Co. v. White,* 204 Ariz. 500, 505, 65 P.3d 449, 454 (Ct. App. 2003).

## II. ANALYSIS

The term under dispute in the present action, "occurrence," has been defined in the Flores policy as "an accident," "including continuous or repeated exposure to substantially the same general harmful conditions." (Doc 1-1 at 66.)

> The word 'accident,' as used in insurance policies, is generally defined as 'an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force.' The usual understanding of the word 'clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.'

*GRE Ins. Grp. v. Green*, 194 Ariz. 251, 253, 980 P.2d 963, 965 (Ct. App. 1999) (quoting *Century Mut. Ins. Co. v. S. Ariz. Aviation, Inc.,* 8 Ariz. App. 384, 386, 446 P.2d 490, 492 (1968)).

Nevertheless, the Kubal Defendants argue, based on *Arizona Property & Casualty Insurance Guaranty Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987), that multiple

acts which cause a single injury constitute multiple "occurrences." *Helme* involved the injury of a patient after one doctor failed to look at spinal x-rays when treating him and another doctor failed to review the x-rays before performing surgery on him. *Id.* at 131–36, 735 P.2d at 453–58. The medical malpractice policy at issue indemnified insureds separately up to the limit for "each occurrence" in which an insured became legally obligated to pay damages because of professional negligence. *See id* at 134, 735 P.2d at 456. The *Helme* court determined that the number of causative acts, not the number of injuries caused, determined the number of occurrences and thus concluded that "[m]ultiple acts causing a single injury will constitute multiple occurrences." *Id.* at 135, 735 P.2d at 457. *Helme* held that because the doctors' failures were separate causal acts of separate doctors on separate days, two occurrences led to the injury and death, and the patient's survivors could recover for two covered claims. *Id.* at 136, 735 P.2d at 458.

However, the definition of "occurrence" in *Helme* is significantly different from that in the present case. In *Helme*, "occurrence" was defined as "any incident, act or omission, or series of related incidents, acts or omissions *resulting in* injury." *Id.* at 134, 735 P.2d at 456 (emphasis added). Because the policy defined an occurrence as something "resulting in" injury, the *Helme* court analyzed the number of causative acts that resulted in the injury. The Flores policy at issue here, however, does not define "occurrence" in causal language, rather it defines "occurrence" as an "accident" with no reference to the causes of injury in the accident. The plain language of the Flores policy contemplates coverage for each accident, i.e., the collision between the pickup truck and tractor trailer, not the individual acts of negligence of the policy holder that might have led to the accident.

Kubal Defendants also point to *Austin Mutual Insurance Company v. Aldecoa*, 2 CA-CV 2011-0040, 2011 WL 4794936 (Ariz. Ct. App. Oct. 11, 2011), wherein the Arizona Appellate Court held that the acts of two grandparents constituted two occurrences, rather than a single "occurrence," under their homeowner's insurance

- 5 -

policy.[2] The Kubal Defendants rightly point out that the policy in *Austin* also defines "occurrence" as an "accident." And still, the *Austin* court engaged in the same type of *Helme*-style causal analysis to determine the number of occurrences. However, the *Austin* court used the *Helme* causal test because the insurance company in that case, Austin Mutual Insurance Company, agreed to use that test. The *Austin* court stated: "Austin has conceded this causal test applies and that the number of occurrences is determined by the 'number of causative acts.'" *Id.* at fn 1. In the present case, Grain Dealers has made no such concession. The Court therefore applies the plain language of the Flores policy, and holds that the number of "occurrences" does not rely on the number of "causative acts" but is determined by the number of "accidents." There is only one accident in the present case: the collision between the Sharbono pickup truck and the Kubal tractor trailer.

The Kubal Defendants also argue that the two separate aggregate limits on liability found in the Flores policy, $1,000,000 for "Products/Completed Operations Aggregate" and $1,000,000 for "General Aggregate (other than Products/Completed Operations)" can be combined. Grain Dealers argues the two are separate, that the General Aggregate limit has not been triggered, and that only the Products/Completed Operations Aggregate limit applies. Because the Court finds that only one "occurrence" took place due, it is not necessary to address whether the two aggregate limits in the Flores policy can be combined.

Grain Dealers has requested an award of attorney's fees under A.R.S. § 12-341.01. Though attorney's fees are available in contractual claims under A.R.S. § 12-341.01, they are given "at the discretion of the court." *Progressive Classic Ins. Co. v. Blaud*, 212 Ariz. 359, 364, 132 P.3d 298, 303 (Ct. App. 2006). Grain Dealers gives no basis for this

---

[2] *Austin* contains the following notice from the Court of Appeals of Arizona: "THIS DECISION DOES NOT CREATE LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED BY APPLICABLE RULES. *See* Ariz. R. Sup. Ct. 111(c); Ariz. R. Civ. App. P. 28(c); Ariz. R. Crim. P. 31.24." This disclaimer may diminish the value of the case to the Kubal Defendants' arguments. However, because the case is distinguishable, the Court will address its contents.

request, and thus the Court, in its discretion, declines to award attorney's fees.

## CONCLUSION

The meaning of "occurrence" in the Flores insurance policy is "accident." The Court finds as a matter of law that because there was only one accident – the collision between the Sharbono pickup truck and Kubal tractor trailer – there is only one occurrence under the policy and thus the $500,000 limit applies. This limit falls under the Products/Completed Operations Aggregate limit. The General Aggregate limit does not apply.

**IT IS THEREFORE ORDERED** that Plaintiff Grain Dealers' Motion for Summary Judgment (Doc. 52) is **GRANTED**.

**IT IS FUTHER ORDERED** that the Counterclaim of the Kubal Defendants (Doc. 23) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action and enter judgment accordingly.

Dated this 4th day of December, 2013.

/s/ A. Murray Snow
G. Murray Snow
United States District Judge